CITY OF PHILADELPHIA, Petitioner,

v.

WORKERS' COMPENSATION APPEAL
BOARD (STEWART), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 26, 1999.

Decided April 15, 1999.

William C. McGovern, Philadelphia, for petitioner.

Neil E. Jokelson, Philadelphia, for respondent.

Before FRIEDMAN, J., LEADBETTER, J., and LORD, Senior Judge.

LORD, Senior Judge.

The City of Philadelphia (Employer) petitions this Court for review of a Workers' Compensation Appeal Board (Board) order that reversed and remanded a Workers' Compensation Judge's (WCJ) decision denying Rickie Stewart's (Claimant) claim petition pursuant to the provisions of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4.

The following facts are culled from the WCJ's findings, and are not disputed by Employer. On January 29, 1994, Claimant was on call as an electrician for Employer. Claimant was normally assigned to a plant at 8200 Enterprise Avenue, west of the Schuylkill River in Philadelphia. On the same day, William Hecker, an operations crew chief at the Enterprise Avenue plant, phoned Claimant between 5 and 6 p.m. Claimant was not immediately available to take Hecker's call, but Claimant called Hecker back shortly

thereafter, and they discussed an electrical problem at the plant. At some point after 6 p.m., Claimant phoned Hecker and asked whether his suggestions for resolving the problem had worked; Hecker said that they had not. Following this second conversation, Claimant, under the mistaken belief that Hecker had asked him to come into the plant, proceeded to drive his car there. After Claimant had crossed the Passyunk Avenue Bridge over the Schuylkill River, he was involved in an accident in which the vehicle he was driving went off the road and through a fence, causing injury to Claimant. At no time did Hecker request that Claimant come to the plant on the day of the accident, nor did Claimant indicate that he would be coming in.

On March 8, 1994, Claimant filed a claim petition. Employer filed a timely answer to the petition denying its material allegations. Both parties agreed to bifurcate the issue of liability from the medical and disability issues. After hearings and the receipt of exhibits, the WCJ dismissed Claimant's claim petition. On appeal, the Board, concluding that Employer had directed Claimant to come to work on the day of the accident,[1] reversed the dismissal of the petition as to the issue of liability and remanded the case for further proceedings concerning the medical and disability issues. Employer now appeals to this Court.[2]

■ The issue presented in this case is whether Claimant sustained his injuries while in the course of his employment. As a general rule, injuries sustained by an employee traveling to or from his place of work are not considered within the scope of employment and thus are not compensable un-

der the Act. *Peer v. Workmen's Compensation Appeal Board (B & W Construction),* 94 Pa.Cmwlth. 540, 503 A.2d 1096 (1986). However, an employee will be considered to have sustained an injury in the course of employment, as an exception to the "going and coming rule," when: (1) the employment contract included transportation to and from work; (2) the employee has no fixed place of work; (3) the employee is on special assignment for the employer; or (4) special circumstances are such that the employee was furthering his business of the employer. *Denny's Restaurant v. Workmen's Compensation Appeal Board (Stanton),* 142 Pa. Cmwlth. 531, 597 A.2d 1241 (1991). Exceptions three and four are at issue here.

■ Employer contends that Claimant fails to qualify for the special assignment exception, since being "on call" was a normal part of his duties. Employer cites *Action, Inc. v. Workmen's Compensation Appeal Board (Talerico),* 116 Pa.Cmwlth. 81, 540 A.2d 1377 (1988), *affirmed,* 523 Pa. 419, 567 A.2d 1040 (1990) in support of its argument. In *Action, Inc.,* an insurance adjuster attended a monthly meeting of a professional association. Upon reaching his home, he fatally injured himself after slipping on ice. We held that, since this monthly meeting was a part of his regular duties, he was not on a special mission which constituted an exception to the "going and coming rule." In the instant matter, Claimant was required to be "on call" once every thirteen weeks. (N.T., Deposition of Rickie Stewart, 8/8/94, p. 5) The infrequency of Claimant's being "on call," coupled with the fact that being "on call" did not necessarily require that Claim-

---

1. The Board in its opinion states that substantial, competent evidence does not exist to support the WCJ's finding that Employer did not expressly request that Claimant come to work on the day of the accident. We disagree. As authority for our conclusion, we cite the following accepted testimony of William Hecker:

    A. I was convinced that Rickie Stewart wasn't going to come in and look at those pumps.

    . . .

    Q. At any time during that second conversation did you ask Mr. Stewart to come in to the plant.

A. No, sir.
Q. At any time during your second conversation did you ask Mr. Stewart did he indicate that he would be coming into [*sic*] the plant to assist you?
A. No, sir.
(N.T., WCJ's Hearing, 6/7/95, pp. 14–15).

2. Our scope of review is limited to determining whether constitutional rights were violated, errors of law were committed or necessary findings of fact were unsupported by substantial evidence. *Crenshaw v. Workmen's Compensation Appeal Board (Hussey Copper),* 165 Pa.Cmwlth. 696, 645 A.2d 957 (1994).

ant travel to his workplace, leads this Court to conclude that the act of driving to work on the day of the accident was not part of Claimant's regular duties.

Next, Employer argues that, since it did not specifically request that Claimant come to work on the day of the accident, the injury Claimant suffered on the way to work does not fall within the special assignment exception to the "coming and going rule." We disagree. In *Workmen's Compensation Appeal Board v. Hickory Farms of Ohio*, 28 Pa.Cmwlth. 30, 367 A.2d 730 (1976), this Court, citing *Rybitski v. Lebowitz*, 175 Pa.Super. 265, 267, 104 A.2d 161, 162 (1954), held that a work request by an employer can be made either expressly or impliedly. As previously stated, Employer did not expressly direct Claimant to come to work on the day of the accident. However, we conclude that Claimant's "on call" status and discussions with Hecker concerning the problems at the plant amounted to an implied request on the part of Employer that Claimant come to the plant and assist in the repair of the electrical problem that the plant was having.

Claimant's accepted testimony was that, when "on call," he was the electrician responsible for responding to all emergencies of an electrical nature at the plant.[3] (N.T., Deposition of Rickie Stewart, 8/8/94, p. 5). After receiving multiple phone calls from Hecker concerning the electrical problem at the plant, Claimant acted in accordance with his responsibilities as the "on call" electrician and attempted to make his way to the plant in the effort to help resolve the situation. Had Claimant done otherwise, and the electrical problem had gone unresolved, he would have almost certainly incurred the ire of Employer. Indeed, Claimant's response was one that any conscientious employee would have made. Accordingly, we conclude, as the Board did, albeit for different reasons, that Claimant was on a special mission for Employer, and thus in the course of employment, when he was injured in the car accident.

The order of the Board is affirmed.

### ORDER

AND NOW, this 15th day of April, 1999, the order of the Workers' Compensation Appeal Board, No. A97–2971, dated September 25, 1998, is hereby affirmed.

---

3. Claimant testified to the following concerning his "on call" status:

Q. With regard to the weekend in question were you on standby status then?
A. Yes, I was.
Q. What did that entail, what were you involved in?
A. My responsibilities on standby, I was responsible for the Southwest Water Pollution Control Plant as well as the Southeast Water Pollution Control Control Plant. I was the electrician that responded to all of the emergencies anything going wrong electrical in either plant.

Q. What period of time would that standby situation cover?
A. I was paid from eight o'clock in the morning to twelve o'clock at night.

. . .

Q. If the city needed to notify you of an emergency how would that be done?
A. They furnished me with a beeper or they would call me at home on the phone.
(N.T., Deposition of Rickie Stewart, 8/8/94, pp. 5–6).